## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DON GOSSARD,** | |
| **Plaintiff,** | **Case No. 2:14-cv-1842** |
| **v.** | **Judge Peter C. Economus** |
| **WARDEN, MADISON CORRECTIONAL INSTITUTION,** *et al.* | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

Plaintiff Don Gossard, an Ohio prisoner at the Madison Correctional Institution ("Madison"), filed this case alleging that Defendants Warden of Madison, Madison Unit Manager Ms. Ester, and Madison Acting Unit Sergeant Mr. Scales failed to protect Plaintiff from an assault by his cell mate. This matter is before the Court for consideration of a motion to dismiss filed by Defendants Warden and Scales[1] (doc. 13) and a request for appointment of counsel by Plaintiff (doc. 14 at 3). For the reasons that follow, Defendants' motion to dismiss (doc. 13) is **GRANTED IN PART** as to the claims against Defendant Warden and **DENIED IN PART** as to the claims against Defendant Scales, and Plaintiff's request for the appointment of counsel is **DENIED WITHOUT PREJUDICE.**

## I.     Background

Plaintiff alleges that, on the morning of March 15, 2014, he was awoken by his cell mate "punching [him] in the face and about the head," resulting in "a bloody mess," a cut eye, and a swollen and bruised face. (Compl., doc. 3 at 8.) Plaintiff asserts that Defendants failed to protect him from the assault.

---

[1] While Madison mistakenly accepted service on behalf of Defendant Cystal Ester after she had transferred to another location (*see* doc. 15), the record does not indicate that Defendant Ester has been properly served with the complaint.

According to Plaintiff, his cell mate had known mental health problems, and Plaintiff had complained to prison staff on several occasions. He alleges that, prior to the assault, he had "explained the entire problem" to Defendant Ester, who referred Plaintiff to Defendant Scales. Plaintiff alleges that he explained to Scales "what was being said and how [the cell mate] was acting." According to Plaintiff, Scales responded that he was "aware who [the cell mate] was and the [m]ental [p]roblems that he has," and "told [Plaintiff] to give him a day or two and he would move [the cell mate] out of [Plaintiff's] cell." (Compl., doc. 3 at 7.)

Several days later, Plaintiff alleges that he "went in to talk to [Scales] again and remind him of the situation." Scales "got very upset and belligerent with [Plaintiff], made several derogatory statements," and "told [Plaintiff] that [he] was just going to have to deal with it the 'old school' way." Plaintiff alleges that he "tried to explain to him the severity and seriousness of the situation," and Scales "called [him] a crying ass bitch and told [him] to get out of his face." (Compl., doc. 3 at 7.)

On March 14, 2014, Plaintiff alleges that he "informed [Scales] that the situation with [the cell mate] has reached a dangerous position," stating that the cell mate had awoken Plaintiff, standing over him, and stated to him that "I could have had you, it would have been so easy and you would never know it was coming." (Compl., doc. 3 at 7.) Plaintiff also complained to his Unit Officer and Unit Manager. "The Unit Officer told [Plaintiff] he spoke with . . . Scales about the problem, but was informed that [Scales] don't (sic) give a dam (sic) what happens, he is sick and tired of dealing with a bunch of bitches and cry babies." (*Id.* at 7–8.)

Following the alleged assault on March 15, 2014, Plaintiff pleaded guilty to, and was put into segregation for, fighting with his cell mate. Plaintiff now asserts that he pleaded guilty

because he was told that arguing with his cell mate and defending himself during the incident constituted fighting. (Compl., doc. 3 at 8; doc. 14 at 2, ¶ 5.)

Plaintiff filed an Informal Complaint Resolution on March 25, 2014. Denying the grievance on March 27, 2014, prison staff stated that Plaintiff had "never stated to [Scales] that [Plaintiff] feared for [his] safety,"[2] but that Plaintiff had merely complained that his cell mate was waking Plaintiff at night by "talking to himself." (Compl., doc. 3 at 10.)

Appealing this denial, Plaintiff filed a Notification of Grievance dated April 14, 2014. (Compl., doc. 3 at 11.) Because such appeals must be filed within 14 days according to prison procedure, Plaintiff's Notification of Grievance was denied as untimely.

Plaintiff then filed an Appeal to the Chief Inspector on May 12, 2014, arguing that his untimeliness was "not [his] fault" because:

> [T]he only way to obtain a grievance or an appeal form is to send a kite to the institutional inspector then wait for him to send the forms back to you and then you have to wait for unit staff to pick up the mail and deliver the return kites to you. I requested the grievance in a . . . timely manner as stated in the policy. It was not my fault I was not able to file the grievance in the required time.

(Compl., doc. 3 at 113–14.) This appeal was denied. (*Id.* at 15.)

## II.    **Standard of Review**

Defendants move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requires the dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] Plaintiff's response, contained in the later Notification of Grievance, was that "[he] thought that it was implied when [he] notified [Defendant] of the seriousness of the situation." (Compl., doc. 3 at 11.)

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### III.    <u>Exhaustion of Administrative Remedies</u>

Defendants first argue that Plaintiff's claims are barred by his failure to exhaust his administrative remedies. Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a), a prisoner must exhaust all available state administrative remedies before filing a lawsuit in federal court challenging the conditions of his confinement. To satisfy the PLRA's exhaustion requirement, a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

"To exhaust his administrative remedies, a prisoner must adhere to the institutional grievance policy, including any time limitations." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). "When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed," the Court "analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (citing Napier, 636 F.3d at 224); *Peterson v. Cooper*, 463 F. App'x 528, 529–30 (6th Cir. 2012). The Court may not impose prerequisites to exhaustion that are not specified in the administrative grievance procedure. For example, where the plaintiff alleges that he was denied access to a required grievance form, he need not have requested the required form from another source or filed an appeal without the

required form. *Peterson*, 463 F. App'x at 530 (citing *Jones v. Bock*, 549 U.S. 199, 216, 218–19 (2007); *Risher*, 639 F.3d at 240–41). "[A] grievance procedure is not 'available' even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." *Brock v. Kenton Cnty., KY*, 93 F. App'x 793, 798 (6th Cir. 2004) (citations omitted).

In this case, Plaintiff alleges the following:

> [T]he only way to obtain a grievance or an appeal form is to send a kite to the institutional inspector then wait for him to send the forms back to you and then you have to wait for unit staff to pick up the mail and deliver the return kites to you. I requested the grievance in a . . . timely manner as stated in the policy. It was not my fault I was not able to file the grievance in the required time.

(Compl., doc. 3 at 113–14.)

Because Plaintiff has alleged no facts regarding the specific dates he requested and received the required grievance form, and merely implies that prison staff provided the form in an untimely manner, the Court cannot determine at this stage whether prison officials prevented Plaintiff from using the grievance procedure. However, because failure to exhaust is an affirmative defense, Plaintiff need not specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Court therefore rejects Defendants' argument that Plaintiff has failed to exhaust his administrative remedies. The Court notes that, following discovery, Defendants may file a motion for summary judgment on this issue, if appropriate.

## IV.  **Deliberate Indifference**

Even if Plaintiff presents evidence that prison staff thwarted his attempt to exhaust his administrative remedies, Defendants argue that Plaintiff has not stated an Eighth Amendment

claim that Defendants were deliberately indifferent to a substantial risk of serious harm to him. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

To establish an Eighth Amendment claim, Plaintiff must make two showings. First, his alleged mistreatment was objectively serious, "result[ing] in the denial of the minimal civilized measure of life's necessities," and "posing a substantial risk of serious harm," including a "'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 834, 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Second, as to each individual defendant, Plaintiff must show that he or she knew of and disregarded "an excessive risk to inmate health or safety," meaning that the official both (a) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (b) actually drew the inference. *Id.* at 837. A prison official who was not aware of a substantial risk of harm to an inmate may not be found liable even if the risk was obvious and a reasonable prison official would have noticed it. *Farmer*, 511 U.S. at 841–42. While "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," *id.* at 842, "it remains open to the officials to prove that they were unaware even of an obvious risk," *id.* at 844.

Defendants argue that Plaintiff "never alleges Defendants had knowledge of any prior attacks by the cellmate or any other reason why they should have anticipated Plaintiff would be physically attacked." (Doc. 13 at 6.) However, as stated above, Plaintiff alleged that he informed Defendant Scales on March 14, 2014 that "the situation with [the cell mate] has reached a dangerous position," and told Scales specifically that the cell mate had awoken Plaintiff and stated to him, "I could have had you, it would have been so easy and you would never know it was coming." (Compl., doc. 3 at 7.) The Court finds that these statements constituted "facts from which the inference could be drawn that a substantial risk of serious harm exists," and further

6

finds that Plaintiff has alleged facts suggesting that Scales actually drew the inference. The Court therefore **DENIES** Defendants' motion as to the claims against Defendant Scales.

As to Defendant Warden, however, Plaintiff has made no specific allegations. The warden "will be liable for the unconstitutional acts of her [or his] subordinates only if she [or he] actively participated in the unlawful conduct, such as if she [or he] implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012) (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (internal quotation marks omitted); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Because Plaintiff has made no such allegations regarding Defendant Warden, the Court finds that Defendant has failed to state a claim against Defendant Warden. The Court therefore **GRANTS** Defendants' motion as to the claims against Defendant Warden, which are hereby **DISMISSED**.

## V.  <u>Disciplinary Conviction</u>

Defendants argue that Plaintiff's claim is barred because it implicitly challenges his disciplinary conviction for fighting with his cell mate. Defendants primarily cite *McMillan v. Fielding*, 136 Fed. App'x 818 (6th Cir. 2005), for the proposition that a prisoner may not use § 1983 to challenge a disciplinary hearing's validity or the conduct underlying the disciplinary conviction. As the Sixth Circuit explained in *McMillan*, however, the Supreme Court has held that such prisoner claims under § 1983 are barred only to the extent that they challenge the duration of the prisoner's sentence. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (imposing a habeas exhaustion requirement on a prisoner's § 1983 damages action); *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) (holding that *Heck* does not apply if the prisoner's lawsuit does not threaten any consequence for the plaintiff's conviction or the duration of his sentence).

The other cases cited by Defendants all rely on *Heck*, and either predate or miss the Supreme Court's more recent decision in *Muhammad*.

## VI.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity.

> Qualified immunity protects state officials, including prison employees, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of the alleged misconduct. . . . [T]his Court can consider these prongs in either order . . .

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations omitted).

Here, Defendants rely entirely on their argument that, because "there is no allegation . . . that Plaintiff ever told the Defendants that he feared for his safety, there can be no well-established constitutional right for the Court to protect." (Doc. 13 at 9.) As discussed above, Defendants ignore Plaintiff's allegations regarding his statements to Defendant Scales. (Compl., doc. 3 at 7.) Because Defendants make no further arguments, the Court **DENIES WITHOUT PREJUDICE** their motion for qualified immunity.

## VII.    Request for Counsel

Plaintiff's response contains a request for the appointment of counsel. (Doc. 14 at 3.) "[T]here is no right to counsel in prisoner civil rights cases." *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). Rather, "[i]t is a privilege that is justified only by exceptional circumstances," considering the type of case, the complexity of the issues involved, and the plaintiff's ability to represent himself. *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993)

(citations omitted). "Appointment of counsel pursuant to 28 U.S.C. § 1915(d) is not appropriate when a pro se litigant's claims are frivolous, or when the chances of success are extremely slim." *Id.* (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985) (internal citations omitted).

At this stage of the proceeding, the Court finds that no exceptional circumstances are present to justify the appointment of counsel. Plaintiff's request is therefore **DENIED WITHOUT PREJUDICE**.

## VIII.  Conclusion

For the reasons discussed above, Defendants' motion to dismiss (doc. 13) is hereby **GRANTED IN PART** as to the claims against Defendant Warden, which are hereby **DISMISSED**, and **DENIED IN PART** as to the claims against Defendant Scales. Plaintiff's request for the appointment of counsel (doc. 14 at 3) is **DENIED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

**UNITED STATES DISTRICT JUDGE**