```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Don Gossard,                        :
                                         Case No. 2:14-cv-1842
    Plaintiff,                  :
                                         JUDGE MICHAEL H. WATSON
       v.                    :  Magistrate Judge Kemp
                                    :
Warden, Madison Correctional
Institution, et al.                 :

    Defendants.                 :

### REPORT AND RECOMMENDATION

Plaintiff Don Gossard, an inmate at the Madison Correctional Institution, filed this action under 42 U.S.C. §1983 alleging violations of his constitutional rights as a result of the conduct of defendants, Warden of the Madison Correctional Institution, Mr. Scales and Ms. Ester.  Mr. Gossard's claims against the Warden were dismissed in a Memorandum Opinion and Order filed on July 24, 2015 (Doc. 18).  That same order denied a motion to dismiss filed by Defendant Scales.  Defendant Ester has now moved to dismiss the complaint, and the motion has been fully briefed.  For the following reasons, the Court will recommend that Defendant Ester's motion to dismiss be denied.

### I.  Factual Background

Mr. Gossard alleges that in 2014, while he was an inmate at the Madison Correctional Institution, Defendants failed to protect him from an assault by his cell mate.  According to Mr. Gossard, his cell mate was mentally ill, delusional, and known to prison officials to be dangerous.  Some time prior to the assault Mr. Gossard approached Ms. Ester, the manager of his unit, explained the problem to her, and requested that the cell mate be moved to another cell.  Ms. Ester informed him that there was a

new Acting Unit Sergeant, Defendant Scales, starting within a couple of days, and that Mr. Gossard should approach him with his concerns, as it was not her role to arrange cell assignments. The day after Mr. Scales began his new role, Mr. Gossard approached him and explained the issues with his cell mate.  Mr. Gossard states that Mr. Scales acknowledged that he was aware of the mental issues of the cell mate and agreed to move him out of the cell within the next day or two. (Doc. 3, at 7)

While waiting for Mr. Scales to make the bed moves, Mr. Gossard asserts that there was a situation in his cell in which the cell mate violently slammed things in the cell and kicked the door.  He states that the cell mate was reprimanded by a prison officer, and he stopped his violent actions when threatened with placement in segregation.  Several days later Mr. Gossard alleges that he went back to Mr. Scales to follow up and remind him of the situation, but that Mr. Scales because "very upset and belligerent" with him and made several derogatory statements towards him.  Mr. Gossard claims that Mr. Scales told him that he was just going to have to deal with the cell mate situation the "old school" way and that when he tried to explain to Mr. Scales the gravity of the situation, Mr. Scales replied by calling him "a crying ass bitch and told [him] to get out of his face."  On March 14, 2014, Mr. Gossard alleges that he informed Mr. Scales that the situation with the cell mate had reached a "dangerous position," stating that the cell mate had awoken him, standing over him close to his face and threatening "I could have had you, it would have been so easy and you would never know it was coming." (Doc. 3 at 7).  Mr. Gossard also complained to his Unit Officer and to Defendant Ester, but was informed that "[Mr. Scales] don't give a dam (sic) what happens, he is sick and tired of dealing with a bunch of bitches and cry babies." (Id. At 7-8).

2

Mr. Gossard alleges that in the morning of March 15 he was awoken by a violent attack by his cell mate "punching [him] in the face and about the head," resulting in a cut eye, blood loss and a swollen and bruised face.  He asserts that the cell mate was uninjured as he did not fight back when attacked, and only shouted to prison officers for help.  Following the attack, Mr. Gossard was sent to the prison Medical Department and an incident report was filed on his injuries, and afterwards he was placed in segregation and charged with fighting.  When he was brought before the Rules Infraction Board, Mr. Gossard claims that he told the Board that he had been trying to resolve the cell mate situation with Ms. Ester and Mr. Scales before something violent happened, but was told by the Board "[i]t takes two to fight, that [he] had been complaining to Unit Staff about his issues, therefore [he] was guilty of fighting."  Mr. Gossard alleges that the Board convinced him that if he did not plead guilty to the charge of fighting then they would find him guilty and issue disciplinary sanctions, so he plead guilty. (Doc. 3 at 8).  He further claims that he lost his prison job assignment as retaliation for the incident. (Doc. 3 at 9).  As noted, in the prior Memorandum Opinion, the Court found that these allegations stated a claim against Defendant Scales, but not against the Warden, due to the Warden's lack of personal knowledge about or involvement in the incidents leading up to the attack.

## II. Legal Standard

Fed.R.Civ.P. 12(b)(6) provides that the Court may, upon motion, dismiss a claim for relief asserted in any pleading for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 8(a) requires the party pleading a claim for relief to make a "short and plain statement of the claim showing that the pleader is entitled to relief."  When evaluating such a claim in the context of a Rule 12(b)(6) motion, the Court must

ordinarily accept as true all of the well-pleaded factual allegations of the complaint.  However, Rule 8(a) has been interpreted to require that the pleader allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."  Bell Atlantic v. Twombley, 550 U.S. 544, 555 (2007).  Moreover, the factual allegations themselves "must be enough to raise a right to relief above the speculative level ...."  Id.

Twombley established a test of "facial plausibility," replacing the prior standard, announced in Conley v. Gibson, 355 U.S. 41 (1957), under which a complaint was able to withstand a motion to dismiss if there were any possibility that the pleader could prove a viable claim for relief.  Expanding upon Twombley's "facial plausibility" test, the Supreme Court, in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal reiterated the principle that legal conclusions, couched as factual allegations, need not be accepted as true, and that the mere recital "of the elements of a cause of action, supported by mere conclusory statements," cannot save a claim from dismissal under Rule 12(b)(6).  Id. at 1950.  Further, Iqbal allows the reviewing court "to draw on its judicial experience and common sense" when deciding if it is plausible that the pleader can, based on the facts alleged, obtain any relief.  Id.  It is still true, however, that *pro se* complaints are construed liberally in favor of the pleader, even though they, too, must satisfy the "facial plausibility" standard articulated in Twombley.  See Haines v. Kerner, 404 U.S. 519 (1972); Stanley v. Vining, 602 F.3d 767, 771 (6th Cir. 2010); see also Erickson v. Pardus, 551

4

U.S. 89 (2007).  It is with these standards in mind that the instant motion will be decided.

### III. Discussion

This current motion to dismiss has been filed by Defendant Ester.  She argues, in a motion that is almost identical to the prior motion filed on behalf of the Warden and Mr. Scales, that "nowhere does the Complaint allege Plaintiff told the Defendant he feared for his safety."  Motion to Dismiss, Doc. 27, at 5.  She repeats that argument in her reply brief, asserting that Mr. Gossard admitted in his responsive memorandum that he never told Ms. Ester that he feared for his safety.  The same argument was advanced by Mr. Scales and was rejected by this Court.

In the Memorandum Opinion and Order denying Mr. Scales' motion to dismiss, the Court (after reciting the legal standard applicable to claims based on the failure of prison officials to protect one inmate from being assaulted by another) said this:

> Plaintiff alleged that he informed Defendant Scales on March 14, 2014, that "the situation with [the cell mate] has reached a dangerous position," and told Scales specifically that the cell mate had awoken Plaintiff and stated to him, "I could have had you, it would have been so easy and you would never know it was coming."  (Compl., doc. 3 at 7).  The Court finds that these statements constituted "facts from which the inference could be drawn that a substantial risk of serious harm exists," and further finds that Plaintiff has alleged facts suggesting that Scales actually drew the inference.  The Court therefore **DENIES** Defendants' motion as to the claim against Defendant Scales.

Memorandum Opinion and Order, Doc. 18, at 6-7.

In his complaint, Mr. Gossard alleges that, concerning these statements made by his cell mate, he "explained this situation to my Unit Officer; to Acting Sgt. Scales and *I even spoke with my Unit Manager, Ms. Ester that same day about the situation* ...."  Complaint, Doc. 3 (emphasis supplied).  Ms. Ester's motion

5

acknowledges that this allegation is in Mr. Gossard's complaint, but she disputes its significance, arguing that the complaint "does not allege Defendant had any reason to anticipate an attack." Doc. 27, at 4. But this Court has already found that the exact same facts put Defendant Scales on notice that Mr. Gossard was at risk. There is no reason to reach a different conclusion with respect to Ms. Ester. To the extent that her motion is based on the contention that Mr. Gossard did not say, in those exact words, that he feared for his safety, it lacks merit; the Court has found that anyone who heard the words he did say (or, at least, that he alleges he said) would have been on notice of a risk of harm, and that it can be inferred from the circumstances that both Mr. Scales and Ms. Ester actually drew that conclusion. The Court finds Ms. Ester's qualified immunity argument unpersuasive for the same reasons, which is the same conclusion previously reached about the qualified immunity argument advanced on behalf of Mr. Scales. See Doc. 18 at 8.

Ms. Ester appears to advance an additional reason why the complaint fails to state a claim against her, contending that her response to Mr. Gossard's complaint - that she "did not do bed moves" - makes is clear that she was not personally responsible for the assault. She cites no case law in support of that argument beyond cases which hold, generally, that respondeat superior is not a proper basis for liability under 1983. See Doc. 27, at 4.

This is not a case, however, where Mr. Gossard seeks to fix liability on Ms. Ester just because she supervised Mr. Scales (if, in fact, that was part of her job). Rather, the complaint alleges that Ms. Ester was personally made aware of Mr. Gossard's safety concerns not only when he first broached the subject with her - at which time her referral of the matter to Mr. Scales may have been a reasonable response, given the relatively low threat

6

level at that time - but on the day before the assault, when the situation had escalated, and a time when (at least according to the complaint) Ms. Ester knew that Mr. Scales had done nothing to address Mr. Gossard's concerns.  At that point, it may well have been unreasonable for her to continue to shift the responsibility onto Mr. Scales when he was clearly not accepting it, and when she was aware that Mr. Scales' failure to act could be interpreted as deliberate indifference to a serious risk of harm.

The case law makes clear that liability under the Eighth Amendment is predicated on two factors: knowledge of a risk of harm, and deliberate indifference to that risk.  Farmer v. Brennan 511 U.S. 825 (1994); Street v. Corrections Corp. of America, 102 F.3d 810 (6th Cir. 1996).  A prison official's job description is not determinative of whether that official possessed the required degree of knowledge to create Eighth Amendment liability.  See Harper v. United States, 2014 WL 1745872, *13 (M.D. Pa. May 1, 2014)("Plaintiff is correct that Defendant['s] reliance on his job description, alone, is insufficient to prove that he was not personally involved in the cell assignment decisions" at issue).  It is also important to remember that this matter is before the Court by way of a motion to dismiss, where all of the well-pleaded allegations of the complaint are to be taken as true.  The complaint asserts that Ms. Ester was the Unit Manager.  It is at least plausible, from that allegation, that she had some responsibility for securing the safety of inmates in her unit, even if specific tasks like making bed assignments had been delegated to others.  Further, as noted, Mr. Gossard's claim is not that she was responsible solely by virtue of her position, but based on specific information he told her about why he was at risk.  At this stage of the case, the Court cannot conclude that Mr. Gossard would be unable to prove liability on Ms. Ester's part if he can establish that all

of the facts he has pleaded are true.  That necessitates denial of her motion to dismiss.

## IV.  Recommendation

For the reasons stated above, and in keeping with the Court's ruling in the Memorandum Opinion and Order filed on July 24, 2015, the Court recommends that Defendant Ester's motion to dismiss be denied.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge